UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD WAYNE GRAY,<br><br>Defendant. | 5:24-50176-CCT<br><br>**PRETRIAL RULINGS** |

Consistent with the Court's oral rulings made during the July 16 and 18, 2025 pretrial conference in the above-captioned case and upon further consideration of the matters taken under advisement, it is ORDERED:

1. **Notice of expert testimony from Monica Eaton-Harris.** The government noticed its intent, Dockets 29 and 73, to introduce expert testimony from Monica Eaton-Harris. Defendant objects on several grounds, Docket 67. Because Eaton-Harris's ability to testify as noticed and the permissible scope of such testimony depends on factors that are not currently available or fully developed, the Court holds the government's notice of expert testimony from Eaton-Harris in abeyance and if necessary, will make a determination as to the admissibility and scope of her testimony and any request for admission of the recording of the forensic interview conducted by Eaton-Harris during trial.

2. **Notice of expert testimony from Hollie Strand.** The government noticed its intent, Dockets 30, 71 and 98, to introduce expert

1

testimony from Hollie Strand. Defendant objects on several grounds, Docket 68.

An expert witness "who is qualified as an expert by knowledge, skill experience training or education" may testify if the expert's "knowledge will help the trier of fact understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The proponent of the evidence must demonstrate that the expert witness's testimony is "based on sufficient facts or data" and "the product of reliable principles and methods," and that the expert witness reliably applied those principles and methods. *Id.* Some factors the court may consider in deciding whether expert testimony is scientific knowledge that will assist the trier fact include whether the knowledge can be tested, is subject to peer review, has a known or potential error rate, and is widely accepted in the scientific community. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–94 (1993). The inquiry is flexible, but its "overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Id.* at 594–95. "[w]hen assessing the admissibility of proffered scientific expert testimony under Rule 702, the trial court must also take into account the interplay of other relevant rules of evidence, such as Rule 403[.]" *United States v. Kime*, 99 F.3d 870, 884 (8th Cir. 1996) (citation omitted).

Having reviewed Strand's qualifications and the proffered subject matter of her testimony, the Court finds that she is qualified to testify as an expert in this case. Strand possesses academic training in psychology, criminology, counseling, corrections, and forensic science, and has extensive professional experience, including service as an inpatient mental health practitioner and

outpatient counselor for sex offenders. She has conducted trauma-informed forensic interviews with children—many of whom reported sexual abuse—for nearly a decade. Her experience and training qualify her to offer expert testimony on the typical characteristics of perpetrators, characteristics of victims of sexual abuse, patterns of disclosure by child victims, and related psychological and behavioral dynamics not commonly known to laypersons.

The Court further finds that Strand's testimony is both reliable and relevant to the issues in this case. Her opinions are grounded in her professional experience and informed by established practices in forensic interviewing. This Court has previously admitted Strand's testimony on this subject in *United States v. Elk*, 5:24-CR-50044-CCT, 2024 WL 3236908, at *3-4 (D.S.D. June 28, 2024). Additionally, after considering Rule 403, the Court finds that Strand's testimony is not unfairly prejudicial, and its probative value outweighs the danger of unfair prejudice to the defendant. The proposed testimony is neither cumulative nor likely to confuse the issues or mislead the jury.

With regard to defendant's request for the Court to consider Strand's testimony in conjunction with that of defendant's expert witness, the Court declines to do so. The admissibility of each expert's testimony will be evaluated independently. Accordingly, defendant's objections are overruled. The testimony noticed at Dockets 30, 71, 98 is admissible, and Strand may testify within the bounds of the notice.

3. **Notice of expert testimony from Dr. Katherine Jacobs.**
Defendant noticed his intent, Docket 69, to introduce expert testimony from Dr. Katherine Jacobs. The government objects on

several grounds, Docket 76. Defendant responded to the government's objections at Docket 87.

Federal Rule of Criminal Procedure 16(b)(C)(iii) provides, in part, that "[t]he disclosure for each expert witness must contain . . . a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief[.]" Fed. R. Crim. P. 16(b)(1)(iii). Rule 16(b)(1)(iii) "requires a complete statement of all opinions the expert will provide, but does not require a verbatim recitation of the testimony the expert will give at trial." *Id.* advisory committee's note to 2022 amendment.

Defendant's notice at Docket 69 and response at Docket 87 describes Dr. Jacobs's opinions. The Court finds that the notice provides the government with sufficient notice of the general subject matter of Dr. Jacobs's anticipated testimony.

Having reviewed Dr. Jacobs's qualifications and the proffered subject matter of her testimony, the Court finds that she is qualified to testify as an expert in this case. Dr. Jacobs possesses academic training and extensive experience in providing psychological testing, clinical and forensic evaluations, and psychotherapy to children, adolescents, and adults. Her experience and training qualify her to offer the testimony that has been noticed. The Court further finds that Dr. Jacobs's testimony is both reliable and relevant to the issues in this case. Her opinions are grounded in her professional experience and informed by established practices in forensic interviewing and psychology. Additionally, after considering Rule 403, the Court finds that Dr. Jacobs's testimony is not unfairly prejudicial, and its probative value outweighs the danger of unfair prejudice to the government.

The proposed testimony is neither cumulative nor likely to confuse the issues or mislead the jury.

Accordingly, the Court concludes that it is not necessary to hold a *Daubert* hearing. *See United States v. Aungie*, 4 F.4th 638, 645 (8th Cir. 2021) (providing that "when the district court is satisfied that the testimony is 'reasonably based on [the expert's] education, training, and experience, the court does not abuse its discretion by admitting the testimony without a preliminary hearing" (alteration in original) (quoting *Johnson*, 860 F.3d at 1139)).

The government's objections are overruled. The testimony noticed at Docket 69 is admissible, and Dr. Jacobs may testify within the bounds of the notice.

4. **Notice of intent to impeach with prior conviction.** Pursuant to Federal Rule of Evidence 609(a), the government noticed its intent, Docket 77, to impeach the defendant with the following convictions: (1) Conspiracy to Possess with Intent to Distribute Methamphetamine, and (2) Possession with Intent to Distribute Methamphetamine, in case 2:11-CR-272 (United States v. Rubio-Rios et al). Defendant does not object to the government's notice; however, he requests that the specific nature and underlying facts of the conviction be excluded. If defendant chooses to testify, the Court will permit the government to impeach defendant by reference to the prior convictions noticed at Docket 77, in accordance with Federal Rule of Evidence 609(a).

The government also represents that it intends to elicit testimony from defendant's supervising officer, Shelby Heatherly, regarding her supervision of defendant, statements and admissions defendant made to her, and dates on which she can confirm

5

defendant was in the state of Wyoming. The government has included post-conviction chronological reports, Exhibits 37 and 38, on its exhibit list that it intends to introduce through Ms. Heatherly. Defendant objects and made an oral motion in limine to exclude Exhibits 37 and 38 at the pretrial hearing on July 18, 2025, asserting that the exhibits violate the Court's prior order concerning the government's notice of intent to impeach with a prior conviction under Rule 609, and that both exhibits contain hearsay statements. If Ms. Heatherly testifies, she can indicate that she had defendant on supervision, but may not discuss the details of the criminal case that required him to be on supervision. She may also testify as to admissions defendant made to her, as statements against interest. She may also confirm dates she was aware that defendant was in the state of Wyoming.

After reviewing Exhibits 37 and 38, the Court finds that the exhibits contain hearsay, information that is not relevant to the charges in this case, and they are inadmissible under Rule 404(b). Accordingly, the Court grants defendant's oral motion in limine, and the government's Exhibits 37 and 38 are precluded.

Defendant may raise objections to any line of questioning that he believes exceeds the permissible scope permitted by this Order, including any inquiry into the nature or factual circumstances of the convictions.

5. **Testimony by two-way closed circuit.** In the event that the victim is unable to testify in the courtroom, the government requests, Docket 79, that the victim be permitted to testify by two-way closed circuit television pursuant to 18 U.S.C. § 3509(b)(1)(B). Defendant objects at Docket 92. The Court holds the government's motion for testimony by two-way closed circuit in abeyance and

will address the request if and when it becomes necessary during trial.

6. **Notice of intent to admit Rule 807 evidence.** Pursuant to Federal Rule of Evidence 807, the government noticed its intent, Docket 80, to introduce hearsay testimony and recording of Eaton-Harris's forensic interview with the victim. Defendant responded at Docket 90. The Court has already addressed this matter in section 1 above.

7. **Notice of intent to admit intrinsic evidence and Rules 413 and 414 evidence.** The government noticed its intent, Docket 81, to admit intrinsic evidence and evidence of other acts of sexual assault and child molestation, pursuant to Federal Rules of Evidence 413 and 414. The defendant objects at Docket 93.

*Intrinsic Evidence – J.A.*
"Evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred." *United States v. Young*, 753 F.3d 757, 770 (8th Cir. 2014) (citations omitted). "Such evidence is admitted because the other crime evidence 'completes the story' or provides a 'total picture' of the charged crime." *Id.* (quoting *United States v. Johnson,* 463 F.3d 803, 808 (8th Cir. 2006)). "Intrinsic evidence may help to fill the gaps in the jury's understanding of the crime charged." *Id.* (*See United States v. Hall,* 604 F.3d 539 at 543–44 (8th Cir. 2010)). Rule 404(b) does not apply to intrinsic evidence. *Id.* (citing *United States v. Young*, 753 F.3d at 770). However, when admitting intrinsic evidence, "[t]he dictates of [R]ule 403 must still be applied to ensure that the probative value of this evidence is not

7

outweighed by its prejudicial value." *United States v. Bass*, 794 F.2d 1305, 1312 (8th Cir. 1986).

The Court concludes that the noticed evidence of other sexual acts by defendant against J.A. as set forth in Docket 81[1] is admissible as intrinsic evidence. The noticed evidence gives context to the circumstances of the charged offenses of transportation of a minor with intent to engage in sexual activity and sexual abuse involving J.A. and further provides context for J.A.'s reactions to the alleged abuse. *See Young*, 753 F.3d at 770. While the noticed evidence is prejudicial, the evidence is probative to material elements of the charged offenses, and the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusing of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See Bass*, 794 F.2d at 1312.

### *413 and 414 Evidence – D.M. and D.W.*

Under Rule 413, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Crim. P. 413(a). Further under Rule 414, "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child

---

[1] The other alleged sexual acts by defendant against J.A. include defendant spanking J.A., touching her inner thighs and genitals, causing J.A.'s foot and leg to touch his penis in the swimming pool, making inappropriate sexual comments, tickling J.A., grabbing J.A. by her hips and pulling her into him, making comments about J.A.'s appearance, poking J.A.'s breasts, pulling on J.A.'s swimsuit to look under it, taking J.A. shopping to buy fishnet stockings and booty shorts because she would "look hot" in them, and play fighting with J.A. that included poking her in the breast and spanking her. Docket 81 at 3-6 and 9-10.

molestation. The evidence may be considered on any matter to which it is relevant." Fed. R. Crim. P. 414(a). Under these rules, evidence that a defendant committed prior or similar sexual assault offenses may be admitted to show the defendant's propensity to commit such offenses. *United States v. Keys*, 918 F.3d 982, 986 (8th Cir. 2019) (citation omitted).

This propensity evidence is admissible if the defendant's conduct is similar to the charged conduct, and the evidence is not unfairly prejudicial. *United States v. Hollow Horn,* 523 F.3d 882, 887 (8th Cir. 2008) (citation omitted). Before admitting the evidence, the court must first determine that the prior sexual assault is relevant. *United States v. Gabe,* 237 F.3d 954, 959 (8th Cir. 2001). "A prior sexual assault is relevant to a charged offense if it is 'committed in a manner similar to the charged offense.'" *Keys*, 918 F.3d at 986 (quoting *United States v. Crow Eagle*, 705 F.3d 325, 327 (8th Cir. 2013)). Courts must still apply the Rule 403 balancing test before admitting such evidence. *United States v. Withorn*, 204 F.3d 790, 794 (8th Cir. 2000) (citation omitted).

The government has provided notice that it intends to submit evidence of defendant's prior sexual assaults of two minors, D.M. and D.W.

Defendant sexually assaulted D.M. when she was 14 years old and he was 20 years old. He was aware of her young age at the time of the assault. Defendant told her he liked "younger girls." D.M. told defendant she did not want to have sex with him but he persisted and D.M. acquiesced; they had vaginal sex. About a week later, defendant told D.M. he hoped she would not tell anyone because he would go to prison for at least six years if anyone found out. For

9

his actions, defendant pled guilty to sexual assault in the third degree in Wyoming.

The Court concludes that the noticed evidence of other sexual acts by the defendant against D.M. is admissible under Rule 413 and 414. While the prior acts are not identical to the charged offenses, the Court finds they are sufficiently similar. *See United States v. Elk*, 132 F.4th 1100, 1105-06 (8th Cir. 2025) (noting that evidence under Rules 413 and 414 may be admissible "where the offenses were remote in time," "targeted those of different ages," "and involved both family members and non-family members" (citations omitted)). There are several similarities between the incidents with D.M. and the alleged incidents with J.A. Both girls were young and defendant was aware of their young age. Neither consented to defendant, but he engaged in vaginal penetration with both. In both situations, defendant was aware the behavior was not appropriate but instructed D.M. not to tell anyone, and told J.A. that "no one would know."

Defendant sexually assaulted D.W. when she was 14 years old and he was 20. He was aware of her young age, and when she was trying to take a nap he removed her pants and underwear and engaged in vaginal penetration with her even though she did not consent. For his actions, defendant pled guilty to sexual assault in the third degree in Wyoming.

The Court concludes that the noticed evidence of other sexual acts by the defendant against D.W. is admissible under Rule 413 and 414. The noticed acts are sufficiently similar to the charged offenses—defendant was aware of D.W. and J.A.'s young age, he took off their clothes while they were in bed and then engaged in

10

vaginal penetration with them. Both D.W. and J.A. reported that they had not consented and felt forced to have sex with defendant.

Application of the Rule 403 balancing test must be done "in such a way as to allow [Rules 413 and 414] their intended effect." *Withorn*, 204 F.3d at 794 (quoting *United States v. Mound*, 149 F.3d 799, 800 (8th Cir. 1998)). In this regard, there is a "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible[.]" *Id.* (quoting *United States v. LeCompte,* 131 F.3d 767, 769 (8th Cir. 1997)). Importantly, there is no time limit (staleness) on the admissions of evidence of prior sexual assaults. *Hollow Horn,* 523 F.3d at 888–89 (noting that "Congress expressly rejected imposing any time limit on prior sex offense evidence" (citation omitted)). Because propensity evidence is admissible under Rules 413 and 414, admission of the evidence noticed at Docket 81 to show defendant's propensity to sexually abuse children does not result in unfair prejudice. Nor is it unfairly prejudicial to admit such evidence for the purpose of demonstrating defendant's sexual interest in children. *See Mound*, 149 F.3d at 801 (stating that Rules 413 and 414 evidence is "exceptionally probative [ ] of the defendant's sexual interest in children" (citation and internal quotation marks omitted)). Moreover, because the evidence of other acts of sexual abuse is similar to the acts charged, admission of the other act evidence noticed by the government "would not be so facially inflammatory as to unduly divert attention from the issues of the case." *See Gabe*, 237 F.3d at 960 (quoting *United States v. Butler,* 56 F.3d 941, 944 (8th Cir. 1995)).

Defendant's prior convictions of sexual assault on D.M. and D.W. are relevant to this case, where he has been accused of sexual

11

assault on J.A., under circumstances similar to the circumstances with D.M. and D.W. While the noticed 413 and 414 evidence is prejudicial, it is not unfairly prejudicial. The Court finds that the evidence is probative to material elements of the charged offenses, and the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusing of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

8. **Subpoena duces tecum requesting pretrial production of record.** Defendant moves, Docket 85, the Court for subpoena duces tecum pursuant to Federal Rule of Criminal Procedure 17(c)(3) to the named entities, in order to obtain documents relating to the victim's mental health, counseling, and school records. The government objects at Docket 89 arguing that the defendant's motion is untimely. Alternatively, the government contends that the defendant's motion lacks specificity as to what records he seeks and amounts to nothing more than a fishing expedition. The government further asserts that the records requested are privileged and statutorily protected.

The Court notes that the defendant previously filed a similar motion before the magistrate judge, which was denied on procedural grounds. Defendant's current motion is untimely, and no good cause has been shown for the delay; nevertheless, the Court will consider the motion on its merits.

"The Supreme Court established long ago that Rule 17(c) 'was not intended to provide an additional means of discovery.'" *United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996) (quoting *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)); *see United States v. Shanahan*, 252 F.R.D. 536, 539 (E.D. Mo. 2008)

("Rule 17(c) is more narrow than the corresponding rules of civil procedure, which permit broad discovery." (citation omitted)). Rather, Rule 17(c) seeks to expedite a trial by providing a time and place before trial for inspection of subpoenaed materials. *United States v. Nixon*, 418 U.S. 683, 698-99 (1974). "Thus, in order to warrant the issuance of a subpoena duces tecum, a party must show that '(1) the subpoenaed document is relevant, (2) it is admissible, and (3) it has been requested with adequate specificity.'" *Hang*, 75 F.3d at 1283 (citation omitted). "The specificity and relevance requirements demand more than the title of a document and conjecture concerning its contents." *Shanahan*, 252 F.R.D. at 540 (citation omitted); *see also United States v. Bradford*, 806 F.3d 1151, 1155 (8th Cir. 2015) ("[A] subpoena should not issue based upon a party's mere hope that it will turn up favorable evidence." (citation and internal quotation marks omitted)). In addition to those factors, the court must consider a number of additional factors, such as whether: "(1) the materials could be procured through other means, before trial, by the exercise of due diligence; (2) the party cannot adequately prepare for trial without advance production of the documents, and the failure to obtain the documents may tend to unreasonably delay the trial; and (3) the request for the materials is made in good faith and not as a general 'fishing expedition.'" *Shanahan*, 252 F.R.D. at 540.

With respect to evidentiary privileges, the psychotherapist–patient privilege is first recognized in *Jaffee v. Redmond*. 518 U.S. 1, 10-11, 15 (1996) (explaining that recognizing psychotherapist/patient communications as privileged will facilitate "an atmosphere of confidence and trust[,] … [and] serves public ends [because] the mental health of the American citizen … is a public good of

13

transcendent importance"). The Court likened the psychotherapist-patient privilege to that protecting spousal or attorney-client communications. *Id.* at 10. As a result, the Court held "that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from disclosure" under Rule 501. *Id.* at 15. The Court extended this privilege to licensed psychiatrists, psychologists, and social workers. *Id.* The Court further considered—and rejected—any "balancing component" to the privilege that would evaluate the relative importance of the patient's interest in privacy and the evidentiary need for disclosure. *Id.* at 17. However, in context a defendant's right, courts have differed as to whether, and which, statutory or evidentiary privileges can be subordinate to rights under the Fifth and Sixth Amendment. "The Eighth Circuit acknowledged that *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987) and *Davis v. Alaska*, 415 U.S. 308 (1974), 'establish that in at least some circumstances, an accused's constitutional rights are paramount to a State's interest in protecting confidential information' but held that those cases 'do not establish a specific legal rule that answers whether a State's psychotherapist-patient privilege must yield to an accused's desire to use confidential information in defense of a criminal case.'" *United States v. Blue*, 340 F. Supp. 3d 862, 865-69 (D.S.D. 2018) (quoting *Johnson v. Norris*, 537 F.3d 840, 846 (8th Cir. 2008)) (explaining that there is no clear answer to whether a defendant has a constitutional right to the alleged victim's record and, if so, when such right would trump the psychotherapist-patient privileges).

The Court finds that defendant's motion fails to specify the evidence sought. Although defendant claims he was informed of the victim's mental health issue, he does not identify any

14

particular records or describe their potential contents with sufficient specificity. Instead, he broadly requests the production of J.A.'s mental health, counseling, and school records—a request that appears to rest on the "mere hope" that favorable evidence might be uncovered. *See Bradford*, 806 F.3d at 1115. Moreover, defendant has not set forth sufficient facts to overcome the psychotherapist–patient privilege asserted in this case. Thus, defendant's motion at Docket 85 is denied.

9. **Notice of intent to present certified court records.** The government noticed its intent, Docket 94, to present a certified record from the District Court of the Fourth Judicial District Within and For the County of Sheridan, State of Wyoming. Defendant objects, asserting that the Court's ruling on the government's intent to introduce Rules 413 and 414 evidence should control the Court's decision.

Federal Rule of Evidence 902(4) sets forth the requirements for certified copies of public records to be self-authenticating. "When an authorized person certifies facts in public records, the records are admissible under Federal Rules of Evidence 803(8) and 902(4)." *United States v. McIntosh*, 200 F.3d 1168, 1169 (8th Cir. 2000) (per curiam). "[T]o satisfy the requirements of Rule 902(4), a certification need only identify the legal custodian's position of authority, and that the copy is true and correct." *United States v. McGee*, 439 F. App'x 837, 839 (11th Cir. 2011) (citation omitted).

The Court has determined that the government's noticed 413 and 414 evidence is admissible. Therefore, if the records of defendant's prior convictions are compliant with Fed. R. Evid. 902(4), they are admissible.

15

10. **Reference to J.A. as "victim" or "V1."** Defendant's first motion in limine at Docket 95 seeks to preclude the government from referencing the victim as "victim" or "V1." The government objects, arguing that the defendant's position is contrary to the law. Specifically, the government cites 18 U.S.C. 3771(e)(2)(A), which defines a "crime victim" as a person directly and proximately harmed as a result of the commission of a federal offense. The government contends that this designation applies even when no charges are brought or a conviction is not yet secured. In the alternative, if the Court permits the government to use such terminology, defendant requests that the jury be instructed that no individual is legally deemed a "victim" until the jury itself determines that a crime has occurred and someone has been victimized.

    The Court denies defendant's first motion in limine at Docket 95. However, the Court cautions the government to not overemphasize referring to J.A. as the "victim." Further, the Court will instruct the jury that defendant is innocent until proven guilty beyond reasonable doubt.

11. **Preclude the use of the defendant's conviction to impeach.** The defendant's second motion in limine at Docket 95 seeks to preclude the government from using the defendant's prior conviction to impeach unless the defendant elects to testify. The Court has addressed this issue above in section 4.

12. **Preclude Wyoming state convictions.** Defendant's third motion in limine at Docket 95 seeks preclude the government from introducing intrinsic evidence and Rules 413 and 414 evidence. The Court has addressed this issue above in section 7.

13. **Undisclosed discovery.** The government's first motion in limine at Docket 96 seeks to preclude defendant and his counsel from, while the jury is present, introducing any evidence, making any reference, or asking any questions relating to discovery that has not been disclosed to the United States. Defendant does not object; therefore, the government's first motion in limine at Docket 96 is granted.

14. **Exculpatory hearsay.** The government's second motion in limine at Docket 96 seeks to preclude defendant and his counsel from, while the jury is present, introducing any evidence, making any reference, or asking any questions that include or could be reasonably expected to elicit purportedly exculpatory hearsay. Defendant does not object; therefore, the government's second motion in limine at Docket 96 is granted.

15. **Improper character evidence and vouching.** The government's third motion in limine at Docket 96 seeks to preclude defendant and his counsel from, while the jury is present, introducing any evidence, making any reference, or asking any questions that elicit improper character evidence and improper vouching for the defendant's credibility or innocence. Defendant does not object, provided that the ruling does not limit his ability to testify. The government's third motion in limine at Docket 96 is granted, with the exception that this ruling does not limit defendant's ability to testify on his own behalf.

16. **Hearsay within hearsay.** The government's fourth motion in limine at Docket 96 seeks to preclude defendant and his counsel from, while the jury is present, introducing any evidence, making any direct or indirect reference, or asking any questions that elicit

17

hearsay within hearsay. Defendant does not object; therefore, the government's fourth motion in limine is granted.

17. **Penalty or punishment**. The government's fifth motion in limine at Docket 96 seeks to preclude defendant and his counsel from, while the jury is present, introducing any evidence, making any direct or indirect reference, or asking any questions about the potential penalties and punishment the defendant faces. Defendant does not object; therefore, the government's fifth motion in limine at Docket 96 is granted.

18. **Opinion of witnesses as to the truthfulness of the allegations or the appropriate verdict.** The government's sixth motion in limine at Docket 96 seeks limit all witnesses' testimony, including defendants', regarding their opinions as to the truthfulness of the allegations at issue in this case or any comment as to the witnesses' belief as to the guilt or innocence of the defendant regarding these charges. Defendant does not object but requests that the order be reciprocal. The government's sixth motion in limine at Docket 96 is granted and is reciprocal.

19. **Extrinsic evidence to impeach witnesses.** The government's seventh motion in limine at Docket 96 seeks to preclude any attempts to introduce irrelevant and extrinsic evidence about the alleged victim or her mother, or any other witness for the purpose of impeachment. Defendant does not object; therefore, the government's seventh motion in limine at Docket 96 is granted.

20. **Testimony of witness Joshua Dedic via videoconference.** The government's eighth motion in limine at Docket 86 seeks to prevent Deputy Joshua Dedic from testifying via videoconference. Defendant asserts that Deputy Dedic is currently on a family

vacation but indicates that, if the Court denies the request to testify remotely, Deputy Dedic will appear in-person to provide his testimony. As the parties do not agree to allow Deputy Dedic to testify by videoconference, he must appear in person. The government's eighth motion in limine at Docket 86 is granted.

21. **Evidence subject to exclusion under Federal Rule of Evidence 412.** The government's ninth motion in limine at Docket 96 seeks to prohibit the admission of evidence involving alleged sexual misconduct offered to prove J.A.'s sexual predisposition or that J.A. engaged in other sexual behavior. Defendant does not object; therefore, the government's ninth motion in limine at Docket 96 is granted.

22. **Jury nullification issues.** The government's tenth motion in limine at Docket 96 seeks to preclude defendant or his counsel from suggesting to the jury that the jury should acquit for reasons beyond the facts and the law. The government further requests that the order be reciprocal. Defendant does not object; therefore, the government's tenth motion in limine at Docket 96 is granted and is reciprocal.

23. **Limiting courtroom spectators during victim testimony and permitting leading questions.** The government's eleventh motion in limine at Docket 96 requests that the courtroom be partially closed during the testimony of the minor victim and that the Court permit the United States to conduct its examination of the victim using leading questions. Defendant objects. The Court holds the government's eleventh motion in limine in abeyance and will issue a ruling if and when it becomes necessary during trial.

24. **Sequestration of witnesses.** The government's twelfth motion in limine at Docket 96 seeks to sequester all witnesses, except for the case agent, Investigator Stephen Neavill. Defendant does not object but requests that the order be reciprocal. The government's twelfth motion in limine at Docket 96 is granted and is reciprocal.

Dated July 21, 2025.

                        BY THE COURT:

                        /s/ *Camela C. Theeler*
                        CAMELA C. THEELER
                        UNITED STATES DISTRICT JUDGE